UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROL N. RIMMER,
on behalf of J.A.R., III, a minor,

                       Plaintiff,

v.                                                                         Case No. 6:14-CV-1062 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

APPEARANCES:                                                   OF COUNSEL:

OLINSKY LAW GROUP                          HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.             JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Carol N. Rimmer ("Plaintiff") on behalf of her son, J.A.R., III, against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10-11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.      RELEVANT BACKGROUND

   A.      Factual Background

   J.A.R., III was born on June 28, 1998.  At the time of the hearing, J.A.R., III was in the ninth grade.  Generally, J.A.R., III's alleged impairments are muscular dystrophy, hereditary neuropathy with tendency to pressure palsies ("HNPP"), right carpal tunnel syndrome, recurrent strep throat, recurrent ear infections, and headaches.

   B.      Procedural History

   On August 30, 2011, Plaintiff filed an application for Supplemental Security Income on behalf of J.A.R., III.  Plaintiff's application was initially denied on October 25, 2011, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff's hearing was originally scheduled for February 27, 2013, but neither Plaintiff nor her attorney appeared.  On May 24, 2013, Plaintiff and J.A.R., III appeared by video in a rescheduled hearing before the ALJ, Bruce S. Fein.  (T. 39-61.)  On June 17, 2013, the ALJ issued a written decision finding J.A.R., III not disabled under the Social Security Act.  (T. 16-38.)  On June 10, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C.      The ALJ's Decision

   Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 16-38.)  First, the ALJ found that J.A.R., III was "an adolescent" pursuant to 20 C.F.R. § 416.926a(g)(2) on August 30, 2011, the date the application for benefits was filed, and on June 17, 2013, the date of the ALJ's decision.  (T. 22.)  Second, the ALJ found that J.A.R., III had not engaged in substantial gainful activity since the date the application for benefits was filed.  (*Id.*)

Third, the ALJ found that J.A.R., III's right carpal tunnel syndrome and HNPP were severe impairments, but that J.A.R., III's muscular dystrophy, recurrent strep throat, recurrent ear infections, and headaches were not severe impairments. (T. 22-23.) Fourth, the ALJ found that J.A.R., III's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (T. 23.) Fifth, the ALJ found that J.A.R., III's severe impairments, alone or in combination, did not functionally equal an impairment set forth in the Listings. (T. 23-34.) Sixth, and finally, the ALJ found that J.A.R., III has not been disabled, as defined by the Social Security Act, since August 30, 2011, the date his application was filed. (T. 34.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's determination that J.A.R., III's impairments were not functionally equivalent to the Listings was unsupported by substantial evidence. (Dkt. No. 10, at 9-16 [Pl.'s Mem. of Law].) Second, as part of her Listings argument, Plaintiff argues that the ALJ erred in assessing the medical opinions of record. (*Id.*) Third, and finally, Plaintiff argues that the ALJ's credibility determination was unsupported by substantial evidence. (*Id.* at 16-17.)

Defendant makes three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that substantial evidence supports the ALJ's decision that J.A.R., III's impairments were not functionally equivalent to the Listings. (Dkt. No. 11, at 5-15 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly assessed the medical opinions of record. (*Id.*) Third, and finally, Defendant argues that substantial evidence supports the ALJ's finding that J.A.R., III's subjective complaints were not credible to the extent alleged. (*Id.*)

## II. RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*,

805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of 18 is disabled, and thus eligible for Social Security Income benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity . . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By Regulation, the agency has prescribed a three-step evaluative process to determine whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test, which bears some similarity to the five-step analysis employed in adult disability cases, requires determining whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then the child is ineligible for Social Security Income benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examining whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe because they

5

cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, a child is disabled under the Social Security Act "if his impairment is as severe as one that would prevent an adult from working." *Sullivan v. Zebley*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If a severe impairment exists, the third step requires determining whether the child meets or equals a presumptively disabling condition identified in the Listings set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1. 20 C.F.R. § 416.924(d); *Zebley,* 493 U.S. at 526. Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the 12-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality considers how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include the following: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established if the child is determined to have an "extreme," or "more than marked," limitation in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

### III. ANALYSIS

For ease of analysis, Plaintiff's arguments have been reorganized and renumbered.

#### A. Whether the ALJ Erred in Weighing the Medical Opinions of Record

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 5-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

In assessing J.A.R., III's impairments and the resulting limitations, the ALJ afforded substantial weight to the joint opinion of consultative examining neurologists, Dr. David Herrmann, M.D., and Dr. Adam Juersivich, M.D., significant weight to State agency pediatrician, Dr. D. SanJose-Santos, M.D., and some weight to the opinion of treating neurologist, Dr. Ahmed Shatla, M.D. (T. 26-27.)

On August 4, 2011, Dr. Herrmann and Dr. Juersivich examined J.A.R., III and assessed him with right carpal tunnel syndrome and HNPP. (T. 267-69.) Dr. Herrmann and Dr. Juersivich jointly opined that J.A.R., III should avoid activities that could place him at increased

7

risk for compression neuropathies, specifically, crossing his legs when seated, prolonged squatting, excessive nerve stretching or performing highly repetitive, forceful activities. (T. 269.) Dr. Hermann and Dr. Juersivich opined that J.A.R., III should be careful about leaning on his elbows and should periodically change position when seated. (*Id.*) Finally, Dr. Hermann and Dr. Juersivich opined that J.A.R., III should "remain active." (*Id.*)

On October 25, 2011, Dr. SanJose-Santos reviewed J.A.R., III's medical history and opined that he should avoid activities that could place him at risk for compression neuropathy. (T. 292.) Dr. SanJose-Santo opined that J.A.R., III had less than marked limitations in moving about and manipulating objects, and in health and physical well-being.

On February 20, 2013, Dr. Shatla diagnosed J.A.R., III with HNPP and opined that he had limitations on movements and activities. (T. 296.) Plaintiff argues that the ALJ violated the treating physician rule in affording less than controlling weight to the opinion of Dr. Shatla in determining J.A.R., III's impairments and his resulting limitations. (Dkt. No. 10, at 11-12 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ (1) failed to provide "good reasons" for not assigning greater weight to Dr. Shatla's opinion in accordance with the regulatory factors[1] and (2) erred in relying on the joint opinion of Dr. Hermann and Dr. Juersivich, as well as the opinion of Dr. SanJose-Santos. (*Id.* at 11-12.)

The Court finds that the ALJ properly assessed Dr. Shatla's opinion for the following four reasons. First, the ALJ noted that Dr. Shatla only examined J.A.R., III twice, on February 20,

---

[1] These factors include, among others, (1) the examining relationship, (2) the treating relationship, including the length of the relationship, the frequency of examination, and the nature and extent of the treatment relationship, (3) the supportability of the source's opinion, (4) the consistency of the source's opinion with the record as a whole, and (5) the specialty of the source. 20 C.F.R. § 416.927(c).

2013, the date of his opinion, and on May 21, 2013. (T. 27.) Second, the ALJ cited Dr. Shatla's examination notes that did not support his opinion of J.A.R., III's limitations. For example, the ALJ noted that Dr. Shatla observed that J.A.R., III's cerebellar function was intact and that his HNPP had been stable since he was first diagnosed with the condition in August 2011. (T. 25.) The ALJ noted that Dr. Shatla observed that J.A.R., III exhibited a steady gait, normal posture and posture reflex, normal tandem and heel to toe walking, and a negative Romberg's test. The ALJ noted that, when J.A.R., III returned to Dr. Shatla on May 21, 2013, Dr. Shatla stated that J.A.R., III should be watched very carefully in the next few months, but did not opine that he had any limitation on movements and activities and did not place any restriction on his activities. (T. 27.) The ALJ further noted that, despite J.A.R., III's improved clinical findings on May 21, 2013, Dr. Shatla "nonetheless stated that the claimant's condition was getting worse."

Third, the ALJ cited medical opinions and evidence from other treating and examining sources that was inconsistent with Dr. Shatla's opinion. (T. 22-34.) For example, the ALJ noted that Dr. Herrmann and Dr. Juersivich opined that, although J.A.R., III should avoid activities that could place him at increased risk for compression neuropathies, he should also remain active. (T. 31.) The ALJ noted that neurological exams of J.A.R., III performed by treating primary care physician, Dr. Matthew Mittiga, D.O., during the period at issue were "uniformly . . . within normal limits," and that Dr. Mittiga consistently noted that J.A.R., III was functionally capable of performing normal activities of daily living. (T. 26.)

The ALJ further noted that, upon exam by Dr. Herrmann and Dr. Juersivich on August 4, 2011, J.A.R., III did not report any difficulties, had a normal casual gait, and was able to heel and toe walk, run, hop, and stand on one limb with his eyes open and closed. (T. 24-25.) The ALJ

noted that Dr. Herrmann and Dr. Juersivich observed no strength or balance deficits, and observed that J.A.R., III had normal bulk and tone, and exhibited five out of five strength in shoulder abduction, elbow flexion/extension, wrist flexion/extension, finger flexion/extension, intrinsics, abductor pollicis brevis, knee flexion/extension, dorsi and plantar flexion, and toe dorsification. (T. 25.) The ALJ noted that Dr. Herrmann and Dr. Juersivich observed that J.A.R., III exhibited normal finger to nose and heel to shin coordination, normal pinprick sensation, except for a minor decrement in sensation at the right middle finger, and that Tinel's was present at the wrists. (T. 24-25.)

Where, as here, an ALJ's reasoning and adherence to the Regulations are clear, the ALJ is not required to review explicitly each and every factor of the Regulation. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Moreover, an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")

Accordingly, the ALJ did not err in assessing the medical opinions of record.

B.  **Whether the ALJ's Determination that J.A.R., III's Impairments Were Not Functionally Equivalent to the Listings Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 5-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ found that J.A.R., III does not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (T. 23-34.) Functional equivalence to a Listing is established where there is a finding of an extreme limitation in one domain of functioning or a finding of a marked limitation in two domains. 20 C.F.R. § 926a(a). Here, Plaintiff argues that J.A.R., III has (1) an extreme limitation in moving about and manipulating objects, and (2) a marked limitation in health and physical well-being. The Court will examine the evidence with respect to J.A.R., III's functioning in both of these domains.

1.  **Moving About and Manipulating Objects**

This domain concerns how well a claimant moves his body from one place to another and how a claimant moves and manipulates things. 20 C.F.R. § 926a(j). These are called gross and fine motor skills. *Id.* The Regulations state that an adolescent

> should be able to use . . . [his] motor skills freely and easily to get about . . . [his] school, the neighborhood, and the community. . . . [He] should be able to participate in a full range of individual and group physical fitness activities . . . . [He] should show mature skills in activities requiring eye-hand coordination, and should have the fine motor skills needed to write efficiently or type on a keyboard.

20 C.F.R. § 926a(j)(2)(v). Some examples of limited functioning in moving about and

manipulating objects include (i) muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia) that interferes with motor activities, (ii) trouble climbing up and down stairs, or jerky or disorganized locomotion, or difficulty with balance, (iii) difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike), (iv) difficulty with sequencing hand or finger movements (e.g., using utensils or manipulating buttons), (v) difficulty with fine motor movement (e.g., gripping or grasping objects), and (vi) poor eye-hand coordination when using a pencil or scissors. 20 C.F.R. § 926a(j)(3)(i)-(vi). A claimant will have a "marked" limitation in this domain if his impairment "interferes seriously" with . . . [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 926a(e)(2)(i). A claimant will have an "extreme" limitation in this domain if his impairment "interferes very seriously with . . . [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 926a(e)(3)(i).

Here, the ALJ determined that J.A.R., III has marked limitation in this area. (T. 31.) In arriving at this determination, the ALJ considered the testimony of Plaintiff and J.A.R., III, the joint opinion of Dr. Herrmann and Dr. Juersivich, the opinion of Dr. SanJose-Santos, treatment notes from Dr. Mittiga, and J.A.R., III's grades. (*Id.*)

First, the ALJ thoroughly and accurately summarized J.A.R., III's hearing testimony regarding his limitation in this domain. (*Id.*) For example, the ALJ noted that J.A.R., III testified that he has problems with his hands and fingers, including numbness and pain. (T. 31.) The ALJ noted that J.A.R., III reported problems with his hands during activities including writing at school and playing video games. (*Id.*) The ALJ noted that J.A.R., III testified that he has difficulty grasping things with his hands, tying his shoes, fastening or unfastening buttons and zippers while dressing, and attending to his personal hygiene. (*Id.*) The ALJ noted that J.A.R., III testified that he drops things while eating, that his hands bother him when he is cutting

12

something or carrying binders, and that he has difficulty using his locker and using the bathroom at school. (*Id.*) The ALJ also cited testimony from J.A.R., III's mother reporting that J.A.R., III asks for assistance in pouring drinks. (T. 31.)

The ALJ noted that J.A.R., III testified that he has difficulty walking because he trips over his feet and legs on a daily basis, that he has balance issues, that he bumps into things and drops objects that he is carrying, that he has numbness in his arms and legs after walking for a short distance, and that he seldom participates in gym class. (*Id.*) However, the ALJ also noted that J.A.R., III testified that he is able to cook, that he found a tool to help him use buttons and zippers, that he can open shampoo bottles and brush his teeth on his own, that he can catch his balance most of the time when he trips, that he can walk up one flight of stairs, and that he can go from classroom to classroom at school. (*Id.*)

Second, the ALJ cited opinion evidence and examination notes from treating and examining sources regarding J.A.R., III's abilities in this domain. The ALJ noted that Dr. Herrmann and Dr. Juersivich opined that, although J.A.R., III should avoid activities that could place him at increased risk for compression neuropathies, he should also remain active. (T. 31.) The ALJ noted that Dr. SanJose-Santos opined that J.A.R., III's limitation in this domain was less than marked. (*Id.*) The ALJ further noted that Dr. Mittiga observed that J.A.R., III had been swimming and approved him for physical education and school sports for one year. (*Id.*) The ALJ noted that, during the relevant time period, Dr. Mittiga consistently noted that J.A.R., III was functionally capable of performing normal activities of daily living. (*Id.*)

Third, the ALJ noted that, while J.A.R., III testified that he seldom participates in gym class, he still received a passing grade in the course. (*Id.*) Finally, the ALJ concluded that "the evidence of record indicates that the claimant's ability to move about and manipulate objects is

clearly less than age-appropriate; as a result, I have concluded that the claimant has a marked, but not extreme, limitation in his ability to function in this domain." (*Id.*)

Accordingly, the Court finds that the ALJ's conclusion as to this domain is supported by substantial evidence.

### 2. Health and Physical Well-Being

This domain considers the cumulative physical effects of physical and mental impairments and associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. § 926a(l). Where a child's impairments have physical effects that cause extreme limitation in functioning, the child will generally have an impairment that meets or equals a Listing. *Id.*

A child's physical or mental disorder may have physical effects that vary in kind and intensity, and may make it difficult for the child to perform his activities independently or effectively. 20 C.F.R. § 926a(l)(1). Such effects may include generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue, psychomotor retardation, allergic reactions, recurrent infection, poor growth, bladder or bowel incontinence, or local or generalized pain. *Id.* Examples of limitations in this domain include (i) generalized symptoms, such as weakness, dizziness, agitation, lethargy, or psychomotor retardation because of impairment(s), (ii) somatic complaints relating to impairment(s), (iii) limitations in physical functioning because of treatment, (iv) exacerbations from one impairment or a combination of impairments that interfere with physical functioning, or (v) being medically fragile and needing intensive medical care to maintain health and physical well-being. 20 C.F.R. § 926a(l)(4).

Here, the ALJ determined that J.A.R., III has less than marked limitation in this domain. (T. 33.) In arriving at this decision, the ALJ noted that J.A.R., III was diagnosed with right carpal tunnel syndrome and HNPP in August 2011. (*Id.*) The ALJ noted that, at the hearing, J.A.R., III also complained of daily headaches, recurrent strep throat, and recurrent ear infections. (*Id.*) The ALJ noted that J.A.R., III sought "very little" treatment for headaches, that J.A.R., III's temporomandibular joint problems had been resolved with treatment, and that J.A.R., III has had fewer ear and strep throat infections. (*Id.*) The ALJ further noted that J.A.R., III's attendance at school improved during the most recent school year. (*Id.*) The ALJ noted that Dr. SanJose-Santos opined that J.A.R., III's limitation in this domain was less than marked. (*Id.*) Finally, the ALJ concluded that, because there was no evidence of any significant interference in J.A.R., III's ability to function due to the physical effects of his health problems, his limitation in this domain of functioning is less than marked. (T. 33.)

Accordingly, the Court finds that the ALJ's conclusion as to this domain is supported by substantial evidence.

### B. Whether the ALJ's Credibility Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 5-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As a fact finder, the ALJ is free to accept or reject the testimony of a claimant's parent. *Williams on behalf of Williams v. Bowen,* 859 F.2d 255, 260 (2d Cir. 1988). However, an ALJ's finding that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams,* 859 F.2d at 261. "If the child claimant is

unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151-52 (N.D.N.Y. 2012) (citing *Jefferson v. Barnhart*, 64 F. App'x 136, 140 [10th Cir. 2003]). "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child was testifying." *Hamedallah,* F. Supp. 2d at 152.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1)

> claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ determined the following:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the symptoms that have been alleged on behalf of the claimant. Nevertheless, for the reasons explained below, the statements concerning the intensity, persistence, and limiting effects of the claimant's symptoms are not fully credible.

(T. 26.) Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(vii), in assessing allegations of J.A.R., III's disabling symptoms and their limiting effects. Throughout the decision, the ALJ articulated the inconsistencies he considered in assessing the allegations of J.A.R., III's symptoms and in determining that J.A.R., III is not as limited as alleged.

First, the ALJ cited inconsistencies in J.A.R., III's testimony regarding his symptoms and the resulting limitations in his daily activities. (T. 31.) For example, the ALJ noted that J.A.R., III testified that he has difficulty attending to his personal hygiene, but also testified and that he can open shampoo bottles and brush his teeth on his own. (*Id.*) Additionally, the ALJ noted that J.A.R., III testified that he has difficulty walking because he trips over his feet and legs on a daily

17

basis, that he has balance issues, and that he has numbness in his arms and legs after walking for a short distances. (*Id.*) Yet, the ALJ noted, J.A.R., III testified that he can catch his balance most of the time when he trips, that he can walk up one flight of stairs, and that he can go from classroom to classroom at school. (T. 31.) The ALJ further noted that J.A.R., III testified that he has difficulty using buttons and zippers while dressing, but that he has a tool to help him fasten and unfasten buttons and zippers. (*Id.*) Finally, the ALJ noted that, while J.A.R., III testified that he seldom participates in gym class, he still received a passing grade in the course. (T. 31.)

Second, the ALJ cited medical evidence from treating and examining sources that is inconsistent with allegations of J.A.R., III's disabling symptoms. (T. 24-27.) The ALJ noted that, on May 21, 2013, treating neurologist, Dr. Shatla, observed that J.A.R., III's cerebellar function was intact and that his HNPP had been stable since he was first diagnosed with the condition in August 2011. (T. 25-26.) The ALJ noted that Dr. Shatla further observed that J.A.R., III exhibited a steady gait, normal posture, normal posture reflex, normal tandem and heel to toe walking, negative Romberg's sign, and no arthralgias or joint swell. (T. 26.)

The ALJ cited evidence suggesting that J.A.R., III had exaggerated his symptoms. (T. 24.) For example, the ALJ noted that consultative examiners, Dr. Herrmann and Dr. Juersivich, observed that J.A.R., III complained of pain in his shins while running that he initially described as weakness, but indicated that he did not have a loss of strength, numbness, or paresthesias when this occurred. (*Id.*) The ALJ further noted that Dr. Herrmann and Dr. Juersivich observed that J.A.R., III had a normal casual gait, and was able to heel and toe walk, run, hop, and stand on one limb with his eyes open and closed. (T. 24-25.) The ALJ noted that Dr. Herrmann and Dr. Juersivich observed no strength or balance deficits, and observed that J.A.R., III had normal bulk and tone, and exhibited a score of five out of five regarding his strength in his shoulder

18

abduction, elbow flexion/extension, wrist flexion/extension, finger flexion/extension, intrinsics, abductor pollicis brevis, knee flexion/extension, dorsi and plantar flexion, and toe dorsification. (T. 25.) The ALJ noted that Dr. Herrmann and Dr. Juersivich observed that J.A.R., III exhibited normal finger to nose and heel to shin coordination, normal pinprick sensation, except for a minor decrement in sensation at the right middle finger, and that Tinel's was present at the wrists. (T. 24-25.)

Third, and finally, the ALJ cited J.A.R., III's limited treatment record for his symptoms. (T. 25.) The ALJ observed that, while Dr. Hermann and Dr. Juersivich J.A.R. assessed J.A.R., III with HNPP on August 4, 2011, J.A.R., III "did not seek any further medical treatment for his carpal tunnel syndrome or HNPP until February 20, 2013, when he visited a neurologist one week before the date on which his first hearing was scheduled." (T. 25.)

Accordingly, the Court finds that the ALJ's credibility assessment is supported by substantial evidence. When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ complied with the Regulations and articulated the inconsistencies upon which he relied in discrediting the testimony of J.A.R., III's disabling impairments.

For these reasons, the ALJ's credibility assessment was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 30, 2015
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge